May it please the Court, Matt Larson of the Federal Defender's Office for the Appellant. Your Honors, I will endeavor to reserve about three minutes for rebuttal. All right. Your Honors, the government says that in response to the appellant's sentencing arguments, it, quote, provided the district court with aggravating factors. Now, these aggravating factors included giving the judge letters that he described as heart-wrenching and which described other people's physical sexual abuse of children. The government also referred to the appellant as a recidivist who continues to commit this offense and should be appropriately punished. Your Honors. Let me get on that. What is a Booker variance? I've never heard of that. It refers, Your Honor, to after Booker came down and the guidelines. I know what Booker says, but what does that have to do with a variance? You know, I've sentenced people in other districts. I've never heard of a Booker variance. What in the world is it? Fair enough, Your Honor. It might have been better referred to as a 3553 variance. Oh, that's what you mean. I assume you just meant the discretion. Indeed. Indeed. Reflecting the particular facts of the case. Most of us call it 3553. Fair enough, Your Honors. So we'll call it that. All right. Because variance is a term of art. Indeed. So we'll call it a 3553. But there's a difference, though, because if you take the so-called Booker variance, which I think I agree with the district judge. It's totally outrageous to suggest that because that's all within his discretion. If you take that away, then your client is sentenced within the guideline range. That's the case. The parties agreed, of course, that given the facts of the appellant's case and the facts of the defense, the range should be lower. Not only because of the particulars of the case. That's not binding on the judge. You'll agree on that. No, of course not. No. Because you didn't even – or I don't know if it was you, but the lawyer for the defendant didn't even object to that. He said, I'm not going to pay any attention to that. The judge is certainly not bound by the party's recommendation. Right. Your Honor. And he's not bound by the so-called agreement regarding the Booker variance. He is not, Your Honor. Right. Everybody agreed at that, even at the time of sentencing. So he's sentenced within the guideline range. Disregarding the recommendation, correct, and also the recommendation was based not only on the facts of this case, but on the fact that the guideline had issued. It had a deal for recommendation. You didn't have a deal for a particular sentence where the court would either have to accept it or make a plea. And you got the recommendation and the judge sentenced within the guidelines. And the problem is that the prosecutor, instead of just making the recommendation and leaving it at that, submitted evidence to show that it was a really bad crime. Which belied its recommendation. This is like the Johnson and the Whitney cases, right? Not exactly. He didn't belied the recommendation. He just underlined how bad, in his view, receipt of child and possession of child pornography was. Not so much what the defendant did, but what the crime causes. Indeed, Your Honor. The prosecutor, she referred to the general heinousness of this offense, which the district court was already fully aware of, and which is already more than fully accounted for by the guideline at issue. This case is like Johnson and Whitney in that the prosecutor promised. Why can't a prosecutor do that? Referred. When the defendant is free to say, okay, we've got an agreed on recommendation. I really think agreed on recommendation from the prosecutor, but there was no provision that the defendant had to recommend a sentence at least that high. The defendant urged a lower sentence, and the prosecutor submitted material that he thought would induce the judge to not give the lower sentence that the defendant sought, and the judge was so impressed by the material that he gave a higher sentence than the recommendation. Why can't you do that? Because in this case, as in Johnson and as in Whitney, the government promised to make a low-end recommendation. But it did. It did. It did. It went below the guidelines. Your Honor. He did it in response to the defendant's argument that it should be a day in prison. In other words, if he was arrested, that would be the day he's out. I mean, it wasn't a matter of, like Judge Kleinfeld said, a C agreement, where there's a binding agreement where you can, you know, go to trial. If the judge rejects it, it was an agreement that was, well, about 51 months sounds all right to us. You argued your side. You did one day. The prosecutor argued its side, holding to the 51 months. Why doesn't he have or she have then the right to respond to your one-day argument? Right, Your Honor. The right to respond. That argument was made by the government in the Whitney case and rejected by this Court in the Whitney case. In Whitney, the government said the government also points out aggravating facts, and Mr. Whitney said breach, breach of your promise to urge a low-end sentence. The government said, no, we're just responding to your arguments, which are mitigating arguments, and we're trying to guard against a below-guideline sentence here. That's all we're doing. This Court said that argument is a disingenuous argument for a number of reasons, one of which is fully applicable here. That reason was that the district court in that case and in this case gave no indication that it would consider imposing a sentence lower than that which the government was obligated to recommend. That's at page 972 of the Whitney decision. Here, there was no indication at all that the appellant was going to get one day in prison. The government's argument here that, oh, we were just responding to your arguments, we were guarding against a lower sentence, that's exactly the same argument this Court rejected in Whitney. And to refer to Judge Kleinfeld's question, you know, why can't, you know, the government do this, it's because the government agreed in this case to recommend a low-end sentence. It did so technically by saying 51 months, but the government also did so technically in Whitney and in Johnson. They said, yes, we're bound to recommend a low-end sentence and we're doing so, but by the way, here's a witness who's going to talk about how terrible the defendant is. By the way, here's the defendant's criminal history, which is serious. He's a good thief. Here what happened was it wasn't about how terrible the defendant was. It was about how bad this crime is. It's not immediately obvious why somebody sitting in his bedroom, looking at his computer screen all by himself and never once touching a victim is actually doing anything that bad. So what the prosecutor wanted to do was avoid the one-day sentence by saying, no, no, no, it really is bad because here are the social consequences. It's not irrelevant like the ex-wife saying the guy was a monster in Johnson. I would say the violation here is even more egregious than the one in Johnson because at least in Johnson the victim brought in actually was a victim of the defendant. He had assaulted her. That's true. And she spoke about that. That's true. Here the so-called victims are people or the parents of people talking about what entirely other people had done to their children. I think you're right on that. I think the only connection to the defendant here was that some of those victims' pictures he had looked at on his computer. Yeah, that was the representation from the government. That's true. It wasn't objected to. I won't dispute it here. Assuming that some of those people were picturing images, there was no evidence put in that these people were made aware that the appellant existed. There was no evidence that they were informed that the appellant had looked at these images. I wondered about that in terms of did it matter because there's a certain aspect of it that's troubling because you just aggregate these victim statements and then they get trotted out in every case and kind of leveraged, if you will. On the other hand, does it really matter when the individuals represented in those statements were actually individuals that were on the computer with respect to your client? I think it's certainly at least minimally more relevant that they were at least alleged to be on the computer than not. But I think the statements that the government put in, those statements were not just talking about possessors of child pornography. They were talking about people who had physically sexually abused children and used them to produce child pornography. None of that has been alleged here. This was the offense, as Your Honor indicated, of having pictures on one's computer. The appellant here did not abduct anyone, did not physically assault anyone, did not produce child pornography. The people writing those letters were talking about defendants who did. Nobody created the market for it. That's the government's argument. Indeed, Your Honor, but again. In other words, if you didn't have anybody looking, who's going to produce it? Let me give you a hypothetical. Suppose you've got a mere possession case involving drugs. I don't know, marijuana, cocaine, whatever. It's mere possession. Those usually get treated very leniently. And there's a plea agreement to treat it very leniently. And then the prosecutor comes in with pictures of heads rolling down the street in some town in Mexico and all these horrible things that cartels do. Well, none of that would happen if it weren't for the market for the drugs. Does Johnson or does anything else stop the prosecutor from doing that? It does, because in those cases, as in this one, there's a promise made by the prosecutor to recommend a low-end sentence. But there's no – it's true. If he said, I recommend 51 months, but here are all the good reasons why you should reject my recommendation and give a higher one, I would find your argument compelling. Here, I guess the reason I'm not feeling so compelled is that you weren't saying, yeah, 51 months, we've agreed on that. You were saying one day. So the prosecutor says, my gosh, the judge may buy that, because all the guy's doing is looking at pictures in his bedroom. Right. You're right, Your Honor. You are right, Your Honor. Here, the defense did say one day. Now, I've already talked about how in Whitney that argument was rejected, where there's no indication that the court's going to give a lower sentence, and there wasn't here, that it's a disingenuous – I didn't know. I was going to give it. No, I gave it. Doesn't the government have to – it has to sustain at least getting in the guidelines and not having the judge think this isn't a big deal, let's just – maybe even a month or two would be fine. Here's what I submit the government should have done when the defendant put in a request for one day in prison. The government should have put in its sentencing paper saying, Your Honor, the facts of this case are reflected in the plea agreement and the PSR. Now, we've negotiated a recommended sentence of 51 months, which we adhere to, and we think it's an appropriate disposition of this case. It's lower than the guideline recommends. It's lower than the guideline recommends. We think the facts is reflected in the agreement and the PSR bear out a 51-month sentence, period. We are not then going to bring in a parade of letters from people who've been physically assaulted by people other than the appellant. We're not then going to erroneously call the appellant a recidivist who continues committing this offense and has to be appropriately punished. The incident about the alleged recidivism is already fully reflected in the PSR, and Whitney makes clear where the government promises to urge a low-end sentence. Tell me if I've got this right. On the recidivism, what that was all about was the FBI had visited him a few years before. That was before the, I think it's 2008 amendment to the law. Before the 2008 amendment, it was a felony to possess child pornography but not to look at it. And then Congress amended the law and made it a felony to access a site with the intent to look at it. And it looks like it was before that change in the law, and all the guy had been doing was looking and they couldn't find any pictures on his computer, on his hard drive. Is that, have I got that right? Respectfully, I'm not sure that you do. I think paragraph 48 of the PSR says there was some evidence that he had access to a website which contained, among other things, potentially child pornography. That's what I just said. I'm sorry, Your Honor. That was legal before and it was illegal after the 2008 amendment. Then I apologize. Then yes. There was this allegation that he had access to a site potentially containing it. Obviously, there was no charge filed. He wasn't arrested. He wasn't prosecuted. And there was certainly no conviction. Nonetheless, the government here is calling him a recidivist, saying he has to be punished appropriately. He's continuing to commit this offense. The old law criminalized collecting and the new law criminalizes looking. I will defer to Your Honor. I don't know off the top of my head when that change went in, and I will defer to you. But certainly here, that's already reflected in the PSR. And this was a situation in Whitney where the government, again, responding to the defendant and trying to guard against a lower sentence, pointed out the criminal history of the defendant and said, oh, he's been revictimizing his same victims here. He's a recidivist. That was the situation in Whitney. And this court said, that information is already before the judge. Your harping on it is an implicit breach of your promise to urge a low-end sentence. It's contradicting, it's torpedoing your promise of arguing for a low-end sentence. And that's the situation we have here, Your Honors. Do you want to save time for rebuttal? I certainly would. All right. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court. Carrie O'Neill on behalf of the United States. It's the government's contention that the defendant is mischaracterizing Whitney. There's a key distinction in Whitney at page 971, I believe, of that opinion. And in Whitney, the defendant did not ask for a below-guideline sentence. In fact, he was precluded from doing so by the plea agreement. And therefore, the circuit, in deciding Whitney, said that the government was being disingenuous when they said they were guarding against the potential for a 3553A downward variance. Whereas here, we have the exact opposite situation, where the defendant, pursuant to the plea agreement, was allowed to ask for an additional Booker variance, or 3553A variance, and he requested one-day imprisonment. Nothing in the plea agreement bound the United States to sit idly by while he made that additional request. The language in Whitney is somewhat critical here, and it's a question of how we might interpret it in this case. When the government obligates itself to make a recommendation at the low end of the guidelines range, it may not introduce evidence that serves no purpose, but to influence the court to give a higher sentence. So the question then becomes, what's the purpose of these letters? And I'd appreciate your response. Yes, Your Honor. And by way of getting there, I think here, on the record, there is an additional purpose besides whatever defendant is characterizing as some implicit plea to go above the 51 months. It was to set the 51 months as both the ceiling and the floor for the district court and ask the district court not to go below the 51 months. The victim impact statements, Your Honor, and this wasn't raised in the briefs by either the defendant or the government, but the government has a responsibility under the Crime Victims Rights Act, 18 U.S.C. Section 3771B1. Well, you've got some psychologist here who wants to make $5,000 from everyone who ever looked at a picture of any girl that she counseled. Well, that's the restitution issue, Your Honor, but in turn, and I understand your point on that. I'm supporting that. Well, I'm not. This psychologist is going to get really rich if the government keeps supporting that, I guess. I don't know, Your Honor. I mean, you sought restitution for the 5,000 dollars. Again, it's our responsibility under the Crime Victims Rights Act to put forward the victim's request to the court. As officers of the court, the government has an obligation to do that, and it's a statutory obligation. And in regards to the victim impact statements, again, the defendant's argument ignores our statutory obligation, and it ignores this court's precedent, United States v. Kennedy and United States v. Blinkensop, which say in the sentencing context, minors depicted in these types of images are victims. In the victim injuries, usually what it is is A, stole money from B. The government has a duty to B, to try to get the money back. Where crime causes a very general social harm, for example, say it causes higher prices for a whole lot of consumers, an antitrust violation causes a whole lot of consumers to pay higher prices. Does the government ordinarily seek something like a class action remedy for the whole class of consumers? No, Your Honor. But I would argue. It seems like these victims are more like the latter than the former. I disagree. Because the defendant didn't do anything to any one of these particular individuals. He just provided a market for pictures of these individuals. I respectfully disagree, Your Honor, and I rely on Supreme Court precedent in Osborne v. United States and New York v. Ferber. And the Supreme Court has said that there is real harm perpetrated by the possessors of these images, and the real harm is not solely the creation of a marketplace, but there is real harm to the individual victims. No one quarrels with that. Excuse me? No one. I can't imagine anyone quarreling with that. That's the idea. The market creates a harm to victims, just as the market for drugs creates headless corpses in Mexico. But I think there's a tighter nexus here, Your Honor, and I don't want to stray. I don't think the government ever comes into court in a dope case with the surviving family members of the headless corpses. But there also is no statutory provision requiring the government to do so, as there is here under the Crime Victim Rights Act. Congress has decided that victims. These individuals are victims of this crime. The headless person in Mexico is not necessarily a victim of the specific defendant in court. Exactly, and that's why I said there's a much tighter nexus here. These were NCMEC-identified victims whose images had been found on defendants' computers, wasn't objected to below, and the government had an obligation to put these statements into the record. Do you recall the victim letters from people whose pictures were, in fact, in the defendant's collection? Yes, Your Honor. That is my understanding, based on the record and the practice of our office. They would not otherwise be included. Do you know it, or are you just saying, yeah, I assume that's what we did because that's what we try and do? I have to assume it because— You're just assuming, so you can't really make— It's part of the ordinary business practice. It's part of the ordinary business practice. Moreover, the government stated in its sentencing position that it had received victim impact statements from NCMEC and did not actually include— Generally, there's a cover page from NCMEC when you receive these victim impact statements because they'll review all the images from a defendant's collection and then provide the government with the impact statements. I looked through the excerpts of record. I did not see that in there, but the government asserted to the district court and in its sentencing position papers they were NCMEC-identified, and the defendant did not object to that, and he doesn't object to it today in front of this court either. Can you tell me what a booker variance is, would you please? Perhaps it's language that our office should rethink, but generally it means based upon the factors of 3553A, the nature and circumstances of the defendant, his history and characteristics, and the other 3553A factors, that the government and the defendant can argue to the court that he should or the court should vary from the sentencing guideline range. And so here, built into the plea agreement, the government did agree to a total offense level essentially of 24 and agreed to make a low-end recommendation, but it left open the possibility to the defendant to argue outside of that range, and presumably the defendant will always argue lower, and presumably the government's going to want to argue higher at some point. But here, the government never bound itself to be silent in the face of any additional booker variance request by the defendant, and it's not on the face of the plea agreement, and the defendant can't read it in. And I will point out to the court sort of the atmospherics of this, is that the defendant filed his sentencing position paper, the government then responded, and in its sentencing position paper, the government in the factual section referenced the 2007 conduct as the defendant had in his sentencing position paper, and then it explicitly said, based on this 2007 conduct, the government does not believe that the defendant deserves a slap on the wrist. I believe that was the language even used. And then it used it to refute the conclusions of Dr. Karam. And all of this in the government sentencing position paper was under the 3553A booker variance argument that the government made. Then the government comes to the sentencing hearing and not once mentions the 2007 conduct, doesn't mention the victim impact statements, doesn't mention specifically the defendant's request for a one-day sentence. So at the sentencing hearing, when Judge Wright indicated that he was not going to accept the parties or the government's 51-month recommended sentence or defendant's one day, the government did not then pile on, as it were. It simply stated, Your Honor, these are the mitigating factors that caused the government to recommend 51 months. I see the court is not persuaded by the government's arguments, but these are the reasons we made the argument. And that was it. The majority of the sentencing hearing was defense counsel discussing with the court his various arguments. I guess the court, of its own accord, didn't put much weight in this expert therapist report, which sort of basically said that it was not particularly informative even given the timing and was not qualified to. So that would really go to the recidivism aspect, I assume. Yes, Your Honor. And the court just rejected that as I read it. But there wasn't an argument by the government that it should reject the report, was there? Not at the sentencing hearing, Your Honor. That's correct. For the government at a sentencing hearing, it was rather quiet. And I just raised the point in terms of atmospherics that the government did not raise these things that the defendant is now complaining of. It was solely in the sentencing position papers in direct response to their arguments for a one-day sentence, which they say now in hindsight the district court would have never granted, but that's said in hindsight. And again, the government wasn't bound to sit idly by while the defendant made these requests. Does the court have additional comment or questions for counsel? No. Yours not. Okay. Thank you. Mr. Larson. Your Honors, I'd just like to speak to the other principal reason for remanding this case, and that's that the record makes plain that the district judge misapprehended his authority to disagree with the relevant guideline on policy grounds. There's no doubt about it. The district judge here said, I could be wrong, but I don't think that I can reject this guideline for policy reasons because it's nothing like the crack guideline that Kimbrough says can be rejected for policy reasons. Which lines are you referring to? It's on page 1011 of the excerpts. He says, This guideline, unlike the crack one, is an example of the sentencing commission doing what it does so well. That's on page 11 of the excerpts. And he said, Therefore, I don't think that I have the grounds to reject it for policy reasons. Just the next month, this Court made clear that he was indeed mistaken. In fact, according to Henderson, judges have the ability to reject the guideline for policy reasons. And Henderson makes plain that a remand is required. Here, it has to be to a different judge for at least three reasons. I don't see where he says the exact words. Right. It was unclear to me whether he's sort of just, in effect, voicing personal disagreement, in fact, or saying I'm locked in. I don't think it was so clear. Well, Your Honors, I'm locked in. What it looks to me like is he says, Yeah, the crack guidelines, the 100 to 1 ratio was absurd. It simply was. But I don't see congressional meddling in this so much as the other, giving the sentencing commission marching orders and then letting the sentencing commission go off and do what it does so well. It sounds like he's just saying I have more respect for what the guidelines say here than I did for what they said there. I don't see where he says I don't have a legal power that he does have. He said I don't have the authority under Kimbrough to do this because That's why I asked. Right. He said I don't see congressional meddling in this. Henderson said that Where did he say I don't have authority? He doesn't say that expressly. That's what I was asking. He doesn't say that expressly, Your Honor. If you at least agree it's subject to two interpretations, what he said Indeed, Your Honor. I would subject as unclear. And in Henderson, it was also unclear. There's a district court that a district judge that's been a judge more than 30 days that doesn't know that he has discretion or she has discretion. Well, not before Henderson came down. Not necessarily. And in Henderson, the court said it was unclear whether the district judge understood the authority to reject for policy reasons. And When was that decided? The next month, Your Honor. This judge did not have the benefit of Henderson. Henderson came down the next month, and there it was simply unclear. If Your Honors are saying it's unclear here, then still Henderson requires a remand. And the last point I'll make I just don't even see where the judge says anything at all that implies that he thinks he doesn't have authority that he does have. The defense counsel began his argument by laying out the policy reasons to reject 2G 2.2, right? It's based not on empirical study, but it's based on essentially morality earmarks from Congress, given the emotional nature of this offense, right? There's all that research in Czechoslovakia, but I don't think that was brought to his attention. I'm sorry? There's all that research in Czechoslovakia on the social effects of pornography and child pornography. But you used various other material, and it looks like you just didn't buy the argument. I can't see where he made a legal mistake in determining how much authority he had. It was because the argument the defense counsel was making was based on Kimbrough. And at this point, in March of 2011, Henderson hadn't come down. So all we had was Kimbrough. And Kimbrough only concerned the crack cocaine guideline. And so the judge said, well, wait a minute. This is not like Kimbrough. In Kimbrough, the guideline there was absurd. It was crazy. It was 100 to 1. It was based on congressional meddling. This guideline is not like that. This guideline is an example of the commission doing what it does so well. The commission itself has repudiated that notion, and so did Henderson the next month. This guideline is not an example of the commission doing what it does so well. But isn't that an indication that he agreed basically with the guideline? I don't know whether he agreed with the guideline subjectively. And what we don't know is how he would have ruled if he had had the benefit of Henderson. That's the point here. And, again, in Henderson, it was also unclear if the judge apprehended or misapprehended this authority. And merely where it was unclear in Henderson, this Court said we have to remand. And the last point I'd like to make, with your permission, is why it has to be remanded to a different judge. There are at least three reasons here, Your Honor. First of all, the district judge here has already determined the appellant to be not credible. He said directly to him after the appellant spoke at sentencing, I want to make sure that you know we're being open and honest about this, which I think is something that's been lacking. I don't think we're being open and honest. He said later, he said letter, he said later, excuse me, that a letter the appellant had written was obviously not credible. Moreover, the judge here has already been tainted by the letters put in by the prosecutor. Even if you don't agree that that's a breach of the plea agreement, the judge himself would be different if I hadn't read some of those heart-wrenching letters. As Your Honors are aware, the letters concerned only other people's activities, did not concern the appellant. It concerned the general harm of this crime and the market for it, which is already fully accounted for in the guideline at issue, and which was already clear in the record. There was no need for these letters to come in. The judge has been influenced by them. Moreover, the judge imposed a far longer sentence, not only that the parties negotiated, but that even probation called for it. Probation said 78 months. The judge said, no, I'm doing all I can to stay under 97. I'm going to give you seven and a half years to a first-time nonviolent offender for having images illicitly on your computer. Well, it depends on how you define offender, I guess, doesn't it? Indeed, Your Honor. Here, there was an allegation that he'd accessed a site. Did he deny that? This was hotly disputed below, as to whether the site that he visited involved his No, no, not the site. I'm talking about the prior time that the FBI got him involved. You write these nice letters. You'll never do it again. Indeed, it was hotly disputed as to whether this Is that what the judge was referring to when he sentenced him then? The recidivism argument? Right. And the lying argument? The recidivism argument concerns the 2000 And the lying argument? And, yes. Now, true or not, the point here for reassignment is that the judge has already determined this person to be not credible, to be a liar. He's read the PSR. He's given a much higher sentence than all the parties have negotiated. He had a basis for determining that. It's not clear to me why we should send it to a different judge when, in fact, the records would support such a determination. He says, the FBI, hey, this is a one-time deal. You won't be seeing me again. And then, voila, it shows up. That would go to the other arguments as to why the sentence as a whole is unreasonable. Even crediting the 2007 incident, that's one factor. And this court's made clear Your argument about the letters would mean that, in your opinion, this judge, having seen the letters and been affected in his views by the letters, must recuse himself in every child pornography case that comes to him on the wheel. No, Your Honor. I'm saying, on the basis of this record, where the judge read the letters and then said in open court, I read these heart-wrenching letters, and but for them, you would have gotten a lower sentence. On this record, on these facts, to preserve the appearance of justice, the case should be reassigned. There have been other cases, in fact, one the government cited, the Clark case, I believe, where similar letters were put in, and the judge said in open court, you know, I read them, and they're not affecting me in any way. I'm going to give you the low end. They played no role in my determination. Here, just the opposite is true. The government has already read these letters, which, again, had nothing to do with this appellant. Your argument, well in mind, and we've given you an extra six minutes. Thank you very much. With that, we'll conclude the argument. The case just argued is submitted. Thank both of you for your argument this morning, and we're adjourned.
judges: Quist, Kleinfeld, McKeown